The next matter on our calendar is Yan Yang v. Jefferson B. Sessions III. Mr. Yerman. Good morning. Good morning. Good morning. May it please the Court, Gary Yerman on behalf of Petitioner. Your Honors, I'll get right to our main argument. Good. Thank you. Your Honors, both the BIA and the IJ erred in finding that the Petitioner was statutorily ineligible for asylum because she had not filed her application within one year of her entry into the United States. The IJ and BIA incorrectly interpreted the statutory language to require the Petitioner to demonstrate changed circumstances that materially affect each of the underlying basis of her claim for asylum. That's an open question, isn't it? Whether it's each or just the issue on which there are changed circumstances? I say it's not. I say the plain language of the statute is clear. It's an open question in the sense that we've never opined. Yes. That's correct. We've never opined. That is correct. Are there other circuits that have opined on this? Not that I found. There are unpublished, as I mentioned in my brief, there are unpublished BIA decisions which lead to inconsistencies. So if the Court is so inclined to have a more consistent application of the law, so be it. The plain language of Section 20882D of the Act requires that Petitioner demonstrate changed circumstances that materially affect her eligibility for asylum only. It does not differentiate between separate claims within the same application. So once the Petitioner demonstrated credibly, as the IJ found, that there was changed circumstances that affected her claim under her religious portion of her claim, then there was an exception to the one-year filing, and all claims fall within that exception. So when she found my client credible regarding her forced abortion and grant to withholding, she should, in fact, have granted asylum because the exception of the changed circumstances encompassed her abortion claim. If the changed circumstances didn't legitimize the abortion claim, the changed circumstances might have legitimized the Christianity claim, but the abortion claim was a claim for which the changed circumstances was totally unrelated. That's true. But how does the gratuity of a changed policy in a province in China about Christianity have anything to do with retroactively making someone's claim about a family procedure, family planning procedure, become renewed for consideration after it hasn't been raised within a year of arrival? Because the plain meaning of Section 208A2D says once there are changed circumstances Material to material to Yes. Material to an asylum claim. Yes, Your Honor. It doesn't say any asylum claim. It says an asylum claim, and I would presume it means the asylum claim to which the materials, the circumstances are material, right? That could be, but that's not Why would it be there? Otherwise, the exception swallows the whole. Well, Your Honor, because the plain language says once it materially affects a claim for asylum, then all claims fall within that exception. It doesn't disaggregate the claims. It doesn't say there's only to one claim, right? Exactly right, and Congress had that opportunity in both the law and the regulations to bifurcate if they wanted to. And they know how to do that when they have to. Correct. And you're telling us that this is clear, but of course the BIA has been, as I think you were about to point out, somewhat all over the place on this. So let's say that there's an ambiguity about the language and that it's not as clear as you say and not as clear as the government says. Can you talk to us about the legislative history or anything else beyond the language that would help us decipher or discern Congress's intent? No, I'm actually not prepared to do that today. Well, isn't that a problem? That's the first time I've said that in 15 years. I didn't anticipate that question, that the legislative intent, because my argument You didn't anticipate that someone might disagree with you about the clarity of the language? Correct. I did not. My argument, Your Honor, is that the plain You're just sticking with clarity. I'm sticking with clarity, the plain language, under precedent, under shell, under this Court, under the Supreme Court. You don't want to help us out at all. Well, I do want to help you out. I want to say that I think the Court is concerned with maybe a floodgates, maybe people gaming the system by saying, hey, I've got changed circumstances here, so let my old application coattail that. I understand that concern. That is a concern for the Immigration Court. The Immigration Court's job is to determine the credibility of each and every petitioner who comes before them. And if somebody is creative enough to try to fabricate something, I think the Immigration Court will decide that and determine that. And if the legislative history suggested that Congress intended this one-year deadline was to prevent persons who had been in the U.S. for an extended period of time from applying for asylum as an afterthought, if that was the legislative history, what would your answer be? I'm putting you in a tough spot. Yeah. Repeat that question one more time, please. If the legislative history showed or suggested that Congress intended this one-year deadline to prevent persons who had been in the U.S. for some extended period of time, ten years, say, from applying for asylum as an afterthought, what would your answer be? I would defer to the legislative history. And your client presumably would lose based on that. That's correct. But in this situation, the legislative history, the plain language is what we're asking the court to look at. Now, she is, regardless, she's entitled to withholding of removal, right? She is. The IJ granted that, correct? That is. But to be clear, there's a cloud of removal that hangs over her head, okay, all for the rest of her life. There's the issue of separation. Her husband and son are still in China. If she's entitled to asylum, she can petition their children and her husband and child as refugees. Can't withholding? She cannot at all. She can never obtain lawful permanent residence in the United States. She may be required, if ICE asks her to, to actually check in every year, every six months. If they ask her to, why? Because technically there's a removal order against her. So, counsel, if we can all agree that the language is somewhat ambiguous, we have a couple of pathways. One is to send this to the BIA and ask them to write a precedential opinion. But if it's pure statutory interpretation, there's no reason why we ourselves cannot decide the issue. Isn't that correct? Agree 100%. Thank you. That was a softball. As opposed to an incoming missile. We'll hear from the government. There's a, you can lower that if you want. Thank you. I'm awfully petite. Officer McDonald will help you out. You can lower the whole thing. Oh, the actual thing. What a revelation. Oh, that's more. Tell me when you're comfortable. That's actually great. You know what's funny? I'm used to things being elevated because nothing's ever at the right level for me. So this is just marvelous. Good morning, your honors. Stephanie Hennis for respondent. This court should reject Yang's contention that her conversion to Christianity ten years after she arrived in the United States allows her to revive an unrelated asylum claim that she could have but did not put forth in an asylum application within the one year filing deadline. Is there any legislative history that explicitly connects the changed circumstances to the eventual basis for asylum? Yes, so the legislative history does show that the purpose of the changed circumstance was that it materially affects the asylum claim that's being put forth. Yes. Asylum, that's what it says. Exactly. And the- It doesn't disaggregate different kinds of asylum or different claims leading to asylum. While the express terms of that one particular exception does not disaggregate, I think it's important to look at the overall statutory scheme here because we are looking at a one year bar that Congress decided was going to be in effect for asylum claims. And when you look at what the exceptions to that one year bar were, one is an extraordinary circumstance which is not in play in this case. But that had to do with an applicant's inability to actually bring forward the asylum application. And then the second has to do with the scenario that's presented here, where there is some type of change that materially impacts the applicant's eligibility for asylum. And in that instance, it makes perfect sense that Congress would have said, listen, it's important that a person file this application within one year. But if something happens to that person, and now this new asylum claim has arisen or something has happened that impacts a, for example, if somebody had a prior religion claim, but then there's a drastic change in country conditions. Say she'd come to the United States and was practicing her faith in an underground church. And at the time that she came, there was not oppression of underground churches in her province. But then, two years or three years later, that policy had changed. She'd fit, I mean, the statute to some degree, I think, presumes in some ways that there won't be multiple claims for, or bases for asylum. Well, and I think that's the fact that maybe there isn't- That's the easy case, right? The fact that there maybe isn't expressed language about these other, the existence of an earlier claim that could have been brought actually gets that congressional intent showing that within- But it doesn't require the changed circumstances to be material to an asylum claim. That isn't the- It doesn't say that, does it? It does say, so let me, the word application and, so the actual terms of the exception say, an application for asylum may be considered if the alien demonstrates either the existence of changed circumstances, which materially affect the applicant's eligibility for asylum. So that's where the government- Disaggregate on what basis the eligibility for asylum exists. That is true, your honor, except that the government's position is that would be- An asylum application based on abortion? It doesn't. And that's where the, getting at the disaggregation that your honor keeps bringing up, that's where the government's position is that when you look at the overall scheme and the fact that Congress did establish this one year deadline and said if you don't come forward with this claim then you lose the ability to do so. You say the government's view, so the BIA has been, as I pointed out in my earlier question, somewhat all over the map on this question, on this issue, in terms of interpreting the language. Is that correct? It is correct that the petitioner presented an unpublished board decision that did come to a contrary conclusion. Is it your position that there is no way to read that language to even remotely suggest that Ms. Yang's interpretation is correct? If it's done within the context of the overall statutory scheme, then I think I'd- Okay, so you're now agreeing that we need to take a look at the entire scheme. Yes, but that is still- But the language itself at D, the changed circumstances language of 1158 A2D, just looking at that, that's not going to resolve the question for us. I mean, it doesn't, as your sister judge has pointed out, there isn't- Our great presider. I- Omnipotent presider. Yes, your honor, I apologize for not having the precise terminology there. But what I would point out to your honor is that even accepting that looking at this one specific statutory subsection leaves the court a little bit unsure. That still doesn't mean that we need to proceed to the second step of analysis. The court can still conduct a step one plain meeting analysis and do so in the context of looking at the fact that Congress did have a one year time bar laid out and then had these two limited exceptions. Isn't eligibility for asylum just once the first step in a two step process more or less? So you figure out if the person's eligible and then you still have to show or the petitioner still has to show past persecution? Well, yes, you'd have to- For fear of future. Yes, you do have to show that the asylum application is, I don't know that I want to say, I guess eligible for asylum in the context of there isn't a statutory bar that would prevent the individual from applying for asylum. And then yes, there would need to be an analysis of whether the individual meets the precise requirements for asylum with past persecution or a well-founded fear. You mean there are two steps, eligibility plus the actual determination of past persecution or future persecution? Yes, but still in this- Isn't the claim both of those things and the eligibility is just one part of it? The eligibility, I guess I'm not understanding. I'm trying to figure out what Congress means when it refers to, or the statute means when it refers to eligibility for asylum, as opposed to affect the applicant's claim for asylum, for example. Okay, in that context, I would say those are the same thing. I would say eligibility for asylum and the claim to asylum are the same. When they're talking about something that materially affects an applicant's eligibility for asylum, that doesn't get at the question of the time bar in and of itself, but looking at a way to overcome the time bar by saying, look, when I first entered this country, for example in this case, I was not a Christian. There wasn't a way for me to bring an asylum claim at that point because that didn't exist at that time. This language that deals with a circumstance that materially affects the applicant's eligibility for asylum goes toward the merits of the eligibility for asylum. It's more than just the ability to obtain asylum. Yes, because there are people- This case actually illustrates that a bit. There are people, it's true that in this case, while there'd still need to be a determination as to discretion, it's a higher burden for withholding of removal. So a person who meets the requirements for withholding of removal would meet the lesser burden for asylum. However, Congress has made the determination that an asylum application, and therefore obtaining asylum relief, needs to be filed within one year of- Congress cares deeply about forced abortions, as you know. That's true, Your Honor. That's also, I would point out that with withholding of removal, even though that is not as expansive as a, it's not a type of relief that will lead to lawful permanent resident status, the government is withheld from removing the petitioner to China. There's- Because the IJ found her very credible, correct? It's because the IJ found her eligible for withholding of removal. When an individual is able to obtain withholding of removal, they can't be returned to the home country. I see that my time is up if there-  Thank you, Your Honors. Mr. Yerman, you have three minutes for rebuttal. You could raise the podium. Your Honors, Ms. Yang, my client, is a very lovely young woman. She set forth a claim that it's unusual, and maybe that's why there's no precedent before this court. It's unusual that a woman from China who's been forced to have an abortion, who enters the United States, doesn't initially file an application for asylum. But in this case, she did. She did under the premise of being a Christian. And the court found her credible as a Christian. The court found her credible that she was forced to undergo an abortion. But the court made a mistake in bifurcating the case and not reading the plain language of 208 AD2, where it says once she is eligible for asylum, she's eligible. And so I don't believe there's going to be a floodgate. I don't believe there's going to be people, enormous amount of people, gaming the system and trying to get around the one-year issue. This is just one person, and her claim was found credible. The law supports her claim, and we urge the court to agree- I agree with you that this is a tough situation because the very apparent congressional purpose of having the one-year limitation is to prevent stale claims. And yet, her stale claim was found credible, and she got relief under it, not the relief she wanted. But the relief she curiously had been entitled to had she asked for it, since she met the higher burden with regard to withholding and removal. The problem is, what's the rule that comes out? The problem is, is the rule that any change of circumstance that relates to a separate request for asylum then renews earlier stale claims? If you found- That would be the rule, right? If you found credible, if it's filed within a reasonable period of time- As to whether it's timely or not, we can't write into the rule. A credible application can waive the rule. I mean, we have to write- the rule would be, is that if there's a change of circumstance that's material with regard to the application, one aspect of the application, one ground for the application. But there are other grounds that are untimely. Those can be renewed. That would be your- right? Yes, Your Honor. Okay. And what would prevent, just as a- I mean, these are really sort of policy issues, but what would prevent someone who is a citizen of the People's Republic of China from waiting for some evidence of persecution of Christians and then converting and having- and being found credible and then importing everything, all the other claims thereafter to seek asylum? Well, the immigration court, the trial attorneys, by asking questions of why, why did you not bring those prior claims until now? And it will be the court's burden. Credibility. Right. Right. All right. Thank you. Thank you both. Thank you, Mr. Chief Justice. Terrific seat.